1  **WO**
2
3
4
5
6        **IN THE UNITED STATES DISTRICT COURT**
7        **FOR THE DISTRICT OF ARIZONA**
8
9  John R. Browne,                    )    No. CV-11-1740-PHX-SMM
                                      )
10              Plaintiff,             )    **MEMORANDUM OF DECISION AND**
                                      )    **ORDER**
11  v.                                 )
                                      )
12  Michael J. Astrue, Commissioner of Social)
    Security Administration,          )
13                                     )
                Defendant.             )
14                                     )
                                      )
15  _____    )

16         Plaintiff John R. Browne seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)
17  of the final decision of the Commissioner of Social Security ("Commissioner"), which
18  denied him disability insurance benefits under the Social Security Act. (Doc. 1.[1]) Plaintiff
19  asks this Court to vacate the Commissioner's denial. (Doc. 17.) Defendant has responded,
20  Plaintiff has replied, and the matter is fully briefed. (Doc. 23; Doc. 29.) For the reasons that
21  follow, the Court finds that the Commissioner's decision is neither supported by substantial
22  evidence nor free from harmful legal error. The Court will remand this case to the
23  Commissioner for an award of benefits.
24                              **BACKGROUND**
25         Plaintiff was born on July 8, 1955. (Tr. 46.) He has a limited education, is able to
26
27  ───────────────
     [1] "Doc." refers to the documents in this Court's file. "Tr." refers to the administrative
28  transcript. A certified copy of the administrative transcript was provided to this Court by the
    Commissioner of the Social Security Administration on February 10, 2012. (See Doc. 11.)

1 communicate in English, and his employment history shows that he had past relevant work
2 as a cement finisher. (Id.) Plaintiff was originally injured in a workplace accident in 2001,
3 in which he strained his groin and fell backward onto a concrete block, striking his left lower
4 lumbar spine. (Doc. 17 at 3.) Plaintiff eventually received worker's compensation benefits
5 as a result of this injury. (Tr. 51-52.)

6 Plaintiff filed an application for Social Security disability insurance benefits on
7 October 4, 2007. (Tr.37.) In his application, he alleged that he became disabled as of
8 January 1, 2004, though this date was later amended to July 1, 2005 (otherwise referred to
9 as "disability onset date"). (Id.) Plaintiff last met the insured status requirements of the
10 Social Security Act on December 31, 2006 (otherwise referred to as the "date last insured").
11 (Id.)

12 When applying for disability, Plaintiff alleged inability to work due to a back injury
13 and degenerative disc disease. (Tr. 43.) He alleged a variety of symptoms stemming both
14 from the injury and from medications he was prescribed, including pain, fatigue, anxiety,
15 stress, rash, and depression. (Id.)

16 Plaintiff's application was denied initially on February 5, 2008, and upon
17 reconsideration on May 22, 2008. (Tr. 37.) Plaintiff sought an administrative hearing before
18 an administrative law judge ("ALJ"), and the hearing was held on August 11, 2009. (Id.)
19 On October 16, 2009, the ALJ determined that Plaintiff was not disabled for the purpose of
20 receiving disability insurance benefits, finding that even though Plaintiff could not perform
21 past relevant work, he could still perform the full range of "light exertional-level work" and
22 a range of "medium work." (Tr. 45.) This decision became the Commissioner's final
23 decision when the Social Security Appeals Council denied review. (Tr. 1-4.)

## STANDARD OF REVIEW

25 When reviewing a Social Security appeal, the Commissioner's decision must be
26 affirmed if it is supported by substantial evidence and he applied the correct legal standards.
27 See Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004);
28 Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing the

1 Commissioner's factual determinations, acting through the ALJ, this Court will affirm if
2 there is substantial evidence supporting those determinations. See Celaya v. Halter, 332 F.3d
3 1177, 1180 (9th Cir. 2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).

4 Substantial evidence is more than a mere scintilla, but less than a preponderance. See
5 Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003); Mayes v. Massanari,
6 276 F.3d 453, 459 (9th Cir. 2001). Substantial evidence is relevant evidence which a
7 reasonable person might accept as adequate to support a conclusion based on the entire
8 record. Howard, 341 F.3d at 1011; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,
9 599 (9th Cir. 1999).

10 If the evidence can reasonably support either affirming or reversing the
11 Commissioner's conclusion, the Court may not substitute its judgment for that of the
12 Commissioner. See Batson, 359 F.3d at 1193; McCartey v. Massanari, 298 F.3d 1072, 1075
13 (9th Cir. 2002). The ALJ is responsible for determining credibility, resolving conflicts in
14 medical testimony, and for resolving ambiguities. See Benton, 331 F.3d at 1040; Edlund v.
15 Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ's legal determinations are
16 reviewed *de novo*, although deference is owed to a reasonable construction of the applicable
17 statutes. See Edlund, 253 F.3d at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir.
18 2000).

19 **COMMISSIONER'S DISABILITY EVALUATION PROCESS**

20 To qualify for Social Security disability benefits, Plaintiff must show that he suffers
21 from a "medically determinable physical or mental impairment" that prevents him from
22 performing his prior work activities and any other substantial gainful employment that exists
23 in the national economy, and that the impairment "can be expected to result in death or which
24 has lasted or can be expected to last for a continuous period of not less than 12 months." See
25 42 U.S.C. § 423(d)(1)(A). Further, Plaintiff's disabled status must have existed on or before
26 his date last insured. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Tidwill v.
27 Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Flaten v. Sec'y of Health & Human Servs., 44 F.3d
28 1453, 1459 (9th Cir. 1995).

1    Social Security regulations prescribe a five-step evaluation process for an ALJ to determine if a claimant is disabled within the meaning of the Social Security Act. See Batson, 359 F.3d at 1190, 1194; 20 C.F.R. § 404.1520. At step one, the ALJ determines if the claimant is presently engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(b). If the claimant is engaged in substantial gainful activity, then he is not disabled. If not, the ALJ moves to step two to determine if the claimant has impairments or combinations of impairments that significantly limit the claimant's physical or mental ability to do basic work activities and are thus "severe" within the meaning of the regulation. See id. § 404.1520(c). At the third step, the ALJ evaluates if the claimant's impairment meets or medically equals the criteria of a listed impairment found in Appendix 1 of Subpart P of Regulation No. 404. If yes, and the impairment meets the requirements for duration under 20 C.F.R. § 404.1509, the claimant is disabled. If the claimant fails to meet or equal the criteria or fails the duration requirement, the ALJ's analysis moves to step four. See 20 C.F.R. § 404.1520(e). Under step four, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the continued ability of the claimant to perform physical or mental work activities despite his impairment or combination of impairments.[2] See id. The ALJ also determines if the claimant's RFC allows him to perform past relevant work. See id. § 404.1520(f). If yes, the claimant is not disabled. If not, the analysis proceeds to a fifth step where the burden shifts to the Commissioner to demonstrate that the claimant is not disabled by presenting evidence that the claimant retains sufficient RFC to adjust to perform other jobs that exist in significant numbers either in the region where the claimant lives or in several regions of the country. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g).

In this case, Plaintiff's last insured date was December 31, 2006. (Tr. 37.) In determining whether Plaintiff was disabled from his disability onset date, July 1, 2005, the

---

[2]Mental limitations, nonexertional capacity, considers all work-related limitations and restrictions that do not depend on an individual's physical strength, such as difficulties in concentration. SSR 96-8p.

1 ALJ moved through steps one, two and three without finding that Plaintiff was disabled. (Tr.
2 39-43.) Prior to a step four evaluation, the ALJ evaluated Plaintiff's RFC and found that he
3 was limited to "the full range of light exertional-level work and a range of medium work.".
4 (Tr. 45.) Based on Plaintiff's RFC assessment, at step four the ALJ found that Plaintiff
5 could not perform his past relevant work due to his physical limitations. (Tr. 46.) However,
6 the ALJ found at step five that Plaintiff retained sufficient RFC to adjust to perform other
7 jobs existing in significant numbers in the national economy. See 42 U.S.C. § 423(d)(2)(A);
8 20 C.F.R. § 404.1520(g). (Tr. 46-47.)

## DISCUSSION

### A. Step Five of the Sequential Evaluation Process

11 At the fifth step, the burden shifts to the Social Security Administration to
12 demonstrate that the claimant is not disabled and that he can engage in some type of
13 substantial gainful activity that exists in "significant numbers" in the national economy. The
14 ALJ considers the fact that the claimant cannot do the work that he has done in the past
15 because of a severe impairment, considers the claimant's RFC, the claimant's age, education,
16 and work experience, and determines whether the claimant can do any other work in the
17 national economy. The ALJ will find the claimant disabled if the claimant is unable to adjust
18 to any other work. See 20 C.F.R. §§ 404.1520(g), 416.920(g). See also Lockwood v.
19 Comm'r of Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010) (where claimant
20 establishes that she suffers from a severe impairment that prevents her from doing past work,
21 burden shifts to the Commissioner to show that she can perform some other work); Valentine
22 v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (the burden shifts to
23 Commissioner at step five to show the claimant can do other kinds of work).

24 The step five analysis includes a detailed assessment of the medical evidence, the
25 claimant's daily activities, prior work record, any functional restrictions and limitations,
26 medication and other treatment for relief of symptoms, and information and observations by
27 treating and examining physicians and third parties regarding the nature and extent of the
28 claimant's symptoms. See 20 C.F.R. §§ 404.1529, 416.929. Credibility determinations are

the province of the ALJ; however, the ALJ must make specific findings which support a conclusion that the claimant's allegations of severity are not credible. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

### B. ALJ Rationale

The ALJ found conflicting opinion evidence in this case. (Tr. 45.) The ALJ weighed the conflicting opinions and concluded that Plaintiff was not disabled. (Id.) The ALJ also assigned little weight to Plaintiff's subjective symptom testimony, finding it "not fully credible." (Id.) The ALJ found that although Plaintiff could not return to his past relevant work, he maintained a sufficient RFC to perform other jobs existing in significant numbers in the national economy. (Tr. 45-46.)

#### 1. Opinion Evidence

Plaintiff argues that the ALJ decision is based on reversible legal error and does not rest upon substantial evidence. Specifically, he argues that the ALJ erred by: (1) rejecting the opinions of his treating physicians, Drs. Paul Cunningham, James Lavoy, and Natalie Suedekum, who concluded that he was unable to work; and (2) assigning improper weight to the opinions of non-treating and non-examining state agency physicians who opined that he had only moderate physical limitations and was able to work.

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing"

reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. Lester, 81 F.3d at 830. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

An ALJ must accord "controlling weight" to a treating doctor's opinion where medically-approved diagnostic techniques support the opinion and the opinion is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527(d)(2); Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007); Orn, 495 F.3d at 632-33. If the ALJ does not accord the opinion controlling weight, then the ALJ must look to a number of other factors in determining how much weight to give it, such as the length of the treatment relationship, frequency of examination, nature and extent of treatment relationship, evidence supporting the treating doctor's opinion, consistency of the opinion, and the doctor's specialization. See 20 C.F.R. § 404.1527(d)(2)-(d)(6).

Similarly, the Ninth Circuit generally holds that greater weight is to be given to the opinion of an examining physician over and above the opinion of a non-examining physician. See Andrews, 53 F.3d at 1041. As with a treating physician, the ALJ may reject the opinion of an examining physician, even if contradicted by a non-examining physician, only by providing specific, legitimate reasons that are supported by substantial evidence in the record. See Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

It is solely the duty of the ALJ to weigh the evidence and resolve conflicts in the record. See Edlund, 253 F.3d at 1156. An ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). However, "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." Ryan v. Comm'r of Soc. Sec. Admin., 528 F.3d 1194, 1199-1200

1  (9th Cir. 2008).  Moreover, the Commissioner "may not assume that doctors routinely lie in
2  order to help their patients collect disability benefits."  Lester v. Chater, 81 F.3d 821, 832
3  (9th Cir. 1995) (quoting Ratto v. Secretary, 839 F.Supp. 1415, 1426 (D. Or. 1993)).

4  <u>Treating Physician Dr. Paul Cunningham</u>

5  Dr. Paul Cunningham was Plaintiff's treating physician in Washington prior to
6  Plaintiff's move to Arizona, and saw Plaintiff from October 2003 until 2007.  (Tr. 41, 45.)
7  Dr. Cunningham wrote in a letter to the Labor Department in July 2006 that Plaintiff "was
8  permanently disabled and unable to maintain meaningful employment."  (Id.)  The ALJ
9  decision noted, but gave "little evidentiary weight" to this opinion, stating that there was not
10 "significant support in the record for Dr. Cunningham's assessment," and that the doctor's
11 treatment notes mainly summarized Plaintiff's subjective complaints but did not present
12 "objective clinical or laboratory diagnostic findings that support this functional assessment."
13 (Id.)

14 The issue before the Court is whether the ALJ provided specific and legitimate
15 reasons supported by substantial evidence in the record for rejecting Dr. Cunningham's
16 opinion.  See Lester, 81 F.3d at 830 (stating that a treating physician's opinion may not be
17 rejected without "specific and legitimate reasons" supported by substantial evidence in the
18 record).  Plaintiff argues that the ALJ erred in not according full weight to the doctor's
19 opinion, disagreeing with the ALJ's contention that the opinion lacks the support of
20 objective clinical or laboratory diagnostic findings.  (Doc. 17 at 21.)

21 Here, the Court agrees with Plaintiff that the ALJ failed to provide specific and
22 legitimate reasons supported by substantial evidence in the record for rejecting Dr.
23 Cunningham's opinion.  The ALJ discounted this treating physician's opinion primarily
24 because the ALJ found that the doctor's notes mainly summarized Plaintiff's subjective
25 complaints, diagnoses, and medications – but Dr. Cunningham's treatment notes contain no
26 indication that the doctor himself ever discredited Plaintiff's complaints, and the doctor's
27 diagnosis was supported by his own observation of Plaintiff over several years of treatment.
28 Thus, the mere fact that the ALJ questioned the credibility of Plaintiff's complaints to the

1 doctor is not a specific and legitimate reason supported by substantial evidence in the record
2 for discounting the doctor's opinion.

### Treating Physician Dr. James Lavoy

Dr. James Lavoy was Plaintiff's treating physician upon Plaintiff's move to Arizona, and first saw Plaintiff on June 15, 2007. (Tr. 424.) Dr. Lavoy issued a medical source statement in which he opined that Plaintiff could occasionally lift or carry less than ten pounds, due to the fact that Plaintiff "could barely stand or walk." (Tr. 45.) Dr. Lavoy further stated that Plaintiff was limited in other ways, including that he could stand or walk only one hour in an eight-hour day, could sit for only three hours, and could never climb, stoop, kneel, crouch, or crawl. (Id.) The ALJ gave Dr. Lavoy's opinion limited weight as well, because of "the limited treatment period after which the opinion was given," and because the ALJ could look to notes from only two office visits in evaluating the doctor's opinion. (Id.)

Plaintiff contends that the ALJ erred in discounting Dr. Lavoy's opinion, arguing that the ALJ misstated the record in finding that the doctor's medical source statement was completed in July of 2007, one month after Plaintiff's first visit to the doctor, and that the opinion was thus based on only two visits. (Doc. 17 at 22.) Plaintiff correctly points out that Dr. Lavoy's source opinion is dated January 10, 2008, and that the record contains treatment notes from seven different visits from June 2007 to November 2008. (Tr. 428; 412-425.) Although, as Defendant notes, the ALJ was not wholly without a basis for finding that the statement was completed in July of 2007, because Dr. Lavoy wrote therein that the last time he had seen Plaintiff was July 6, 2007. (Tr. 426.)

However, regardless of this irregularity in the dates within the source statement, it is undisputed that the record before the ALJ did contain treatment notes evidencing seven different occasions on which Dr. Lavoy treated Plaintiff. (Tr. 412-425.) Nevertheless, the ALJ discounted the doctor's opinion on the grounds of "the limited treatment period after which the opinion was given and treating notes from only two office visits by which the undersigned could evaluate" the assessment. (Tr. 45.) Thus, the ALJ's stated reasons for

1  discounting Dr. Lavoy's opinions are not supported by substantial evidence in the record.

<u>Treating Physician Dr. Natalie Suedekum</u>

Dr. Natalie Suedekum also completed a medical source statement for Plaintiff, in June 2009, in which she opined that Plaintiff could not perform work on a regular or consistent basis. (Tr. 45.) The doctor further noted that Plaintiff suffered from dizziness and fatigue, and had other limitations including not being able to bend, climb, reach, stoop, or balance. (Id.) The doctor also explicitly stated that Plaintiff's restrictions were in existence prior to his date last insured. (Id.)

The ALJ discounted Dr. Suedekum's opinion, stating:

> the undersigned has considered and evaluated Dr. Suedekum's assessment but finds it too restriction [sic] in light of the medical evidence for the period prior to the date last insured. The undersigned notes that the evidence of record includes treating records from Dr. Suedekum beginning in December 2007, one year after the date last insured.

(Id.)

Plaintiff argues that here too the ALJ failed to provide sufficient justification for discounting the doctor's opinion. (Doc. 17 at 23.) The Court agrees. The ALJ apparently discounted Dr. Suedekum's opinion altogether, in that he gives no indication that he accorded it even limited weight. (Tr. 45.) In disregarding the doctor's opinion, however, the ALJ failed to provide any specific legitimate reasons, merely concluding that the assessment was too restrictive "in light of the medical evidence," without stating upon what medical evidence he based this conclusion. This cursory disposition of the doctor's opinion thus is not a specific and legitimate reason based on substantial evidence.

<u>The ALJ's Reliance on the Opinions of Non-treating and Non-examining Physicians</u>

In contrast to his uniform refusal to credit the opinions of the three treating physicians, the ALJ accorded "significant weight" to the opinion of Dr. Randall Garland, who completed an RFC assessment "following a review of the record in February 2008." (Tr. 45.) This opinion stated that Plaintiff was capable of performing medium exertional-level work with occasional climbing of ramps and stairs, frequent balancing, stooping, kneeling, crouching, and crawling. (Id.) The ALJ stated that he relied on this non-examining

- 10 -

1  doctor's opinion because it was "consistent with the overall evidence for the alleged
2  disability period at issue and the IME reports of June 2005." (Id.) The Integrated Medical
3  Examiner ("IME") reports to which the ALJ refers consisted of two examinations Plaintiff
4  underwent in 2005 at the request of the Department of Labor in connection with his claim
5  for worker's compensation benefits. (Tr. 41.)

6  The Court initially notes that the Ninth Circuit discounts the conclusions of a non-
7  examining physician when they do not testify at a hearing and subject themselves to cross-
8  examination. See Morgan, 169 F.3d at 600 ("Opinions of a non-examining, testifying
9  medical advisor may serve as substantial evidence when they are supported by other
10 evidence in the record and are consistent with it.") (citation omitted); Andrews, 53 F.3d at
11 1037 (finding ALJ was "entitled to adopt the opinion of the non-examining medical advisor,
12 who was present at the hearing and testified, and to discount the opinion of the examining
13 physician, because the ALJ gave specific and legitimate reasons for doing so that were based
14 on substantial evidence in the record in addition to the non-examining psychologist's
15 opinion").

16 The Court agrees with Plaintiff that the ALJ improperly accorded such significant
17 weight to Dr. Garland's opinion. As discussed above, the ALJ discounted the consistent
18 opinions of all three treating physicians, and did so without specific, legitimate reasons based
19 on substantial evidence. At the same time, however, the ALJ assigned the greatest weight
20 to the opinion of this non-examining doctor, without offering sufficient justification for that
21 reliance, merely referencing the IME opinions of two non-treating doctors. (Tr. 45.)
22 The Ninth Circuit requires a higher standard, holding that an ALJ must *explicitly discuss* his
23 rejection of the opinion of a treating physician, setting forth specific, supported reasons for
24 instead crediting the opinions of the non-examining state agency physicians. See Nguyen
25 v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (emphasis added). Thus, the ALJ failed to
26 provide sufficient specific, legitimate reasons supported by substantial evidence in the record
27 for his rejection of the opinions of the treating physicians and his reliance instead on the
28 opinion of the non-examining, non-testifying physician.

- 11 -

### 2. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ improperly refused to credit his testimony about the severity of his subjective symptoms. (Doc. 17 at 13-19.)

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C. § 423(d)(5)(A) (2006)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). Specifically:

> The ALJ may consider at least the following factors when weighing the claimant's credibility: [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (internal quotations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Id. at 958.

Plaintiff alleged worsening pain and fatigue resulting from the initial injury and his degenerative disc disease. (Tr. 43.) He alleged further that he suffers from anxiety, stress, periodic depression, and rashes. (Id.) At the hearing, Plaintiff testified that he suffered from constant pain, his back swells, and his blood pressure elevates when he is active due to the pain. (Id.) He testified further that any activity, including walking, increases his pain, and that even epidural injections have not provided dependable relief. (Id.) He testified that the pain at times will radiate up to his neck and result in migraine headaches. (Id.)

1    In discussing his daily activities, Plaintiff testified that he experienced dizziness and
2 thus did not often drive, but that he could drive short distances on "good days." (Id.) He
3 testified also that he could stand for approximately 45 minutes at a time, sit for up to 30
4 minutes at a time, and on occasion had suicidal thoughts for which he had recently begun
5 counseling. (Tr. 43.)

6    In a separate questionnaire concerning his daily activities which Plaintiff completed
7 in December of 2007, Plaintiff reported that he was able to do household tasks such as
8 laundry, washing dishes, and sweeping, but that he needed to rest during these activities.
9 (Tr. 44.) He stated that he can sometimes take his dogs to the park, and sometimes goes with
10 his wife rock-hunting if he feels well enough, though he stays in the car on those occasions.
11 (Id.)

12    The ALJ acknowledged that Plaintiff had "an underlying medically determinable
13 impairment that could possibly produce some pain or other symptoms," but concluded that
14 when evaluating Plaintiff's symptoms, "the allegations exceed the limitations reasonably
15 expected from the medical findings." (Id.) The ALJ found that Plaintiff's testimony
16 described daily activities which were "not limited to the extent one would expect," because
17 he was "able to drive, do household chores, go out on weekly rock hunting excursions with
18 a group and walk his dogs." (Id.)

19    Moreover, the ALJ found that the IME examiners' reports of 2005 indicated a greater
20 level of daily activities and less pain than Plaintiff's testimony. (Id.) Finally, the ALJ
21 referenced the objective medical diagnostic records, which showed "degenerative changes,
22 but consistently showed *no* stenosis and desxcribed [sic] *moderate* facet degenerative
23 changes, *mild* inferior encroachment without mass effect on nerve roots and *no* disc
24 herniation." (Id.)

25    The ALJ concluded therefore that Plaintiff's subjective symptom testimony was "not
26 fully credible." (Tr. 44-45.) However, the ALJ did allow that Plaintiff's subjective claims
27 were at least partially credible, and took them into account when determining Plaintiff's
28 RFC; as a result, the ALJ found that Plaintiff was capable of "the full range of light

exertional-level work and a range of medium work" instead of wholly accepting Dr. Garland's opinion that Plaintiff was capable of the full range of medium exertional-level work. (Id.)

Upon review, the Court finds that the ALJ's findings are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958. Thus, the ALJ did not err in the manner in which he discounted Plaintiff's subjective complaint testimony. However, the ALJ did not find any evidence of malingering, and indeed explicitly found that Plaintiff's subjective claims were at least partially credible. (Tr. 45.)

Despite this finding of partial credibility, the ALJ failed to acknowledge the influence of Plaintiff's subjective claims upon his determination in Step Five. The ALJ applied the Medical-Vocational Rules (the "grids") to reach a finding of "not disabled" under Rule 202.11. Where a claimant's limitations are not solely exertional, an ALJ must consult the grids first, but upon a finding of "not disabled," must then separately examine the claimant's non-exertional limitations. See Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006).

Here, the ALJ failed to separately examine whether and to what extent Plaintiff's subjective non-exertional limitations affected his determination that sufficient work existed in the national economy that Plaintiff could have performed. Nor did the ALJ elicit testimony from a vocational expert to determine the affect of Plaintiff's non-exertional limitations. Thus, the Court finds that the ALJ erred in applying Rule 202.11 to reach his determination that Plaintiff was not disabled.

## CONCLUSION

In this case, because the ALJ made findings unsupported by substantial evidence at step five, the Court sets aside the ALJ's denial of benefits. See Thomas, 278 F.3d at 954. Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case either for further proceedings or for an award benefits. See Reddick v. Chater, 157 F.3d 715, 728 (9th Cir. 1998). The rule in this Circuit is that the Court should:

> credit[ ] evidence and remand[ ] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The issue turns on the utility of further proceedings. Here, there are no outstanding issues that remain to be resolved before it can be determined that Plaintiff is entitled to an award of benefits. Therefore, pursuant to sentence 4 of the Social Security Act, 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), the Court remands this action to the Commissioner for a computation of benefits.

The Court is mindful of the challenges and difficulties before the ALJ when adjudicating these cases. The ALJs are confronted with a significant caseload and limited resources. Also, the ALJ must apply conflicting standards against complex factual matters, a situation that probably must be resolved through Congressional action. And, as may be noted, the circuit's case law is sometimes at odds with the standards of the Commissioner. Nevertheless, this Court is bound by circuit precedent, which in this instance requires reversal.

Accordingly,

**IT IS HEREBY ORDERED** that this matter is hereby **REVERSED and REMANDED** to the Commissioner for a computation of benefits.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

DATED this 16th day of November, 2012.

_____
Stephen M. McNamee
Senior United States District Judge